## PURCHASE OF SUPPLIES FOR SCHOOLS.

### Circuit Court of Lucas County.

### GOSLINE v. TOLEDO BOARD OF EDUCATION ET AL.

#### Decided, February 29, 1908.

*Schools—Purchase of Coal for the Use of—Neither Advertising for Bids nor Acceptance of Lowest Bid Necessary—Nor is Advertising for Trivial Supplies Required—Discretion—Good Faith—Sections 3987, 3988 and 4017.*

1. Neither Section 3987, Revised Statutes, specifically empowering boards of education, among other designated things, to provide fuel; nor Section 3988, prescribing for bids for certain designated supplies and contracts, but omitting mention of fuel; nor Section 4017, requiring the director of schools, where one is chosen, to advertise for bids, etc., without providing when or how he shall advertise therefor requires advertising for bids for coal or purchase from the lowest responsible bidder.

2. A broad discretion is reposed in boards of education regarding the purchase of necessary supplies for schools; and in the purchase of fuel, gradation of quality of coal, heating capacity, adaptability to heating apparatus, and experience or skill of janitors and other persons managing school furnaces are essential facts to be considered in making selection therefor, which may render it inadvisable to accept the lowest priced coal offered; and where it appears that the board has complied with the requirement that it act in good faith for the best good of the schools according to the light and understanding of its members, acceptance of other than the cheapest coal will not be enjoined.

3. A director of schools is not required, under Sections 3988 and 4017, to go to the expense of advertising for bids for every trivial thing in the way of supplies which may have been ordered by the board to be purchased.

*Marshall & Fraser,* for plaintiff.

*C. S. Northup, C. H. Masters* and *J. H. Tyler,* contra.

WILDMAN, J.; KINKADE, J., concurs; PARKER, J., concurs in a separate opinion.

Appeal from Lucas Common Pleas Court.

This cause was brought to this court by appeal from the court of common pleas. It was a suit by a tax-payer in behalf of him-self and other tax-payers to enjoin the board of education, di-rector of the public schools and the A. G. Blair Company from entering into a certain contract for the purchase and sale of six thousand tons of Jackson coal for the use of the schools in the city of Toledo. It is claimed in behalf of the plaintiff that although the board of education had accepted the bid of the A. G. Blair Company to furnish such coal they were not author-ized to do so; that the acceptance of the bid and any contem-plated contract in accordance with such acceptance were invalid, as not authorized by the statutory provisions relating thereto; and, also, that the members of the board, in the acceptance of the bid, acted arbitrarily, and not in view of the welfare of the schools.

As to the first claim, it becomes essential to examine to some extent the sections of the Revised Statutes authorizing the pur-chase of fuel for public schools. The three sections which have some pertinency are Sections 3987, 3988 and 4017, Revised Stat-utes. The first mentioned section, 3987, empowers the board of education of any district first to "build, enlarge, repair and fur-nish the necessary school houses, purchase or lease sites therefor, or rights-of-way thereto, or rent suitable school rooms, provide all the necessary apparatus and make all other necessary pro-visions for the schools under its control"; and, second, to pro-vide fuel for the schools and to do certain other things with re-gard to the fences and shade and ornamental trees of school house grounds; and to "make all other provisions necessary for the convenience and prosperity of the schools within the sub-districts."

It is to be noted that this authority relates to two classes of acts or proceedings, the one the making of permanent improve-ments or repairs of school houses and furnishing the same, and the other the making provision for supplies, especially the fur-nishing of fuel for the schools. Section 3988, Revised Statutes, provides that: "When a board of education determines to build,

repair, enlarge or furnish a school house or school houses"—
using substantially the phraseology in Section 3987, Revised
Statutes, as to the first of the two classes comprised therein—"or
make any improvement or repair provided for in this chapter,
the cost of which will exceed in city districts fifteen hundred
dollars, and in other districts five hundred dollars, except in
cases of urgent necessity, or for the security and protection of
school property, it shall proceed as follows: 1. The board shall
advertise for bids," and after the bids are opened and examined
shall accept none but the lowest responsible one. Nothing is
said in this section about the purchase of fuel. The provision
stops short of any requirement that advertisements shall be made
for bids for the supply of coal or other fuel for the schools, and
our judgment is that for this reason Section 3988, Revised Stat-
utes, does not apply to the proceeding adopted by the board of
education in the present case. Nothing in Sections 3987 or 3988,
Revised Statutes, requires the purchase of coal from the lowest
responsible bidder.

By Section 4017, Revised Statutes, the management and con-
trol of public schools of whatever name or character in the dis-
trict are given to the board of education, with provisions for the
appointing of certain subordinate officers or employes. The act
provides that, "A board of education in a city district may, at
its discretion, elect a director of schools, who shall serve as such
for the term of two years, unless earlier removed,  *  *  *  and
any vacancy in this office shall be filled for the unexpired term
of such director of schools." Following this authority for the
election of a director of schools are specific provisions as to his
powers and duties, and a careful examination of the section dis-
closes that he is given quite broad discretion and large power in
the carrying out of the purposes of this act. Among other things,
he is charged with the care and custody of all the property of
the school district, real and personal, except moneys. He is re-
quired to oversee the construction of buildings, in the process of
erection, and the repairs of the same. Then comes the provision,
which is claimed to relate to the transactions involved in this
case:

"He shall advertise for bids and purchase all supplies and equipments authorized by the board.   He shall report to the board monthly and oftener if required, as to all matters under his supervision, and report to the board a statement of its accounts, exhibiting the revenues, receipts, disbursements, assets and liabilities of the board," etc.

There is no provision in this section as to when or how advertisements for bids shall be made.   We have only the general direction that he shall advertise for bids and purchase all supplies and equipments authorized by the board.

We are not inclined to think that the Legislature contemplated that for every trival requirement in the way of supplies by the board, the director of schools should go to the expense of advertising for bids; because, in many cases, such expense would be greater that the entire cost of the supplies needed.   Taking this clause of the statute in connection with Section 3988, Revised Statutes, a construction not unreasonable would require that he should advertise for bids under such circumstances as are contemplated by that section; in other words, that where bids are required by law, the director of schools is to do the advertising for them.

There is, however, in this section no requirement as in Section 3988, Revised Statutes, that the board shall accept none but the lowest responsible bid.   There is no provision fixing the duties of the director of schools, after the advertising for bids, except the duty that he shall purchase all supplies and equipment authorized by the board.   We take it that the board may signify to the director of schools the amount and kind of supplies required, whereupon it becomes the duty of the director to make the proper purchases, and for this purpose he is empowered to close the contract with the seller.   And if the conditions of Sections 3987 or 3988, Revised Statutes, would require the board of education to advertise for bids, it is altogether likely that under the same circumstances, where there is no emergency and the amount and kind of property require a letting to a bidder, then the director of schools may likewise be required to advertise for bids. But, as already suggested, there is nothing in Sections 3987 or

3988, Revised Statutes, that requires any advertising for bids for fuel; and we are unable to find anything in either of these sections in connection with Section 4017, Revised Statutes, that requires anything of the kind.

But assuming for the moment that this construction may not be the correct one, we have no doubt that the board of education may select the kind of fuel which it desires; it may seek to purchase wood, or it may prefer coal; the heating apparatus in the school house may be adapted to either anthracite or bituminous coal. Surely a broad discretion is permitted to the board to determine what kind of fuel it will adopt. In the present case the board of education seems to have concluded that Jackson county coal was better adapted to the uses of the schools than either of the other classes of coal, with regard to which testimony has been given and the furnishing of which was offered in bids.

It sometimes becomes an exceedingly nice question as to how far a discretion is preserved to public bodies or officers to avail themselves of the privileges possessed by individuals to buy the best that there is in the market, or on the other hand, as to how far that power is limited by the intent of the Legislature to guard the public against improvidence and corruption. In the case of permanent structures or the repair thereof, it has apparently been deemed not a difficult matter to obtain definite plans and specifications so that the public body may avail itself of the lowest offer made by a competent builder to construct according to such plans and specifications. But when it comes to the furnishing of supplies like fuel for schools, a far more difficult question arises. There are so many gradations of quality or convenience of adaptability to heating apparatus or the experience of janitors or other persons who manage the furnaces, that to require a board of education or director of schools to buy only that which is apparently the cheapest in price, would, in many cases, draw too narrowly the lines of discretion in enabling public officers to obtain that which is best adapted to the uses of the schools.

In the case at bar we have had much discussion and consider-

able evidence as to what was best adapted to the use of these schools, and which kind of coal was the most economical, considering its heating capacity and the price at which it was offered. It seems that there was but one bid for Jackson coal, that of the A. G. Blair Company. There were other bids for Pocahontas and Coshocton coal and some others; and after a consideration of all, and acting in the light of such experience as the board had had in the use of all these different classes of bituminous coal, a majority of the board concluded that it was better to purchase the Jackson coal offered by the A. G. Blair Company than to accept any one of the bids which had been offered for other qualities, kinds or grades. We think that they might legally do his, not losing sight, however, of that just requirement that they should act in good faith and for the best good of the schools, according to their light and understanding.

And this brings us to the consideration of the second question here, whether the claim in the petition has been borne out by adequate proof that they acted arbitrarily, and without regard to the good of the schools. It has been held with almost complete uniformity by the courts, that there is no judicial power to interfere with that discretion which is given to public bodies like city councils and boards of education in the discharge of their duties, unless there is apparently an abuse of such discretion. In the present case it appears that there was more or less discussion upon the question of the acceptance of one or another of the bids, and a majority of the members of the board decided in favor of the bid of the A. G. Blair Company for Jackson coal. They had been furnished with a detailed statement made by the director of schools showing certain tests by experience with different kinds of coal, upon the basis of which he seems to have claimed that the Jackson coal was not the cheapest. Among the witnesses called here was Homer T. Yaryan, a gentleman who has had a very large experience in the use of fuels in the conduct of heating plants. He had used in many of these plants not only the Jackson coal, but the other kinds of bituminous coal, and he expresses his decided view that no reliable test can be made in the manner in which the tests were made by the director of

schools, as is claimed to have been done and to be shown by the
tabulated statement submitted to the board of comparisons one
season with another of coal consumption.  Mr. Yaryan says that
a drop of ten degrees in the temperature may cause an increase
of 50 per cent. in the consumption of coal to produce a desired
temperature; and, although less coal of one kind might be con-
sumed in a long continued cold season in a particular school,
that still the changes of temperature in the one season or an-
other might so decidedly affect the extent of the consumption of
the coal as to destroy the value of such comparison.  It would
also seem from the testimony that the skill of the manipulator
of the heating apparatus has something to do with the problem.
And Mr. Yaryan says that the use of Jackson coal is attended
with less difficulty, requires less experience and skill than does
the proper heating of a structure with Pocahontas coal.  The
board of education might well take into account such matters as
this in making their choice of fuel.

I might elaborate very much more along this line, in consider-
ing the question of whether the board of education acted in
good faith.  The party attacking their proceedings takes upon
himself the burden of establishing his claim, and we think that
the evidence here falls far short of establishing that the board
of education acted in bad faith.  Indeed, the petition does not
quite charge in terms that there was any corruption or bad in-
tent.  It rather charges, somewhat vaguely, perhaps, that they
were careless in the discharge of their duties, regardless of the
good of the schools; that they were arbitrary in the selection
of the bid that was not the lowest responsible one.  The evi-
dence, however, does not lead our minds to the conclusion that
they have been so regardless, so careless of the good of the
schools as to justify the finding that there has been an abuse of
the discretion confided to them.  They are not held to a knowl-
edge of the heating capacity and economy of the Coshocton coal
which they may have subsequently acquired in the use of that
coal in the schools after their purchase of the Jackson coal of-
fered by the A. G. Blair Company had been prevented by in-
junction in the court below.  They are held only to such knowl-

edge as they may fairly be supposed to have had or might reasonably have obtained at the time when they accepted the bid of the A. G. Blair Company; and holding them only to that knowledge, our view is that the burden resting upon the plaintiff to establish his claim has not been sustained. Our judgment, then, is that the injunction should not have been allowed.

There is another reason why at the present time there should be no injunction. The evidence discloses that there is no longer any intention on the part of either the board or the director of schools to close any contract with the A. G. Blair Company. The court below rendered a permanent injunction against the entering into of any contract upon the basis of the acceptance of the Blair bid. Both the A. G. Blair Company and the board of education appealed to this court; at least an official and attorney claiming to represent the board of education filed an appeal bond; but the board of education has disavowed his act and upon its application its appeal has been dismissed. There is here offered in connection with the evidence in the case a very clear indication that the board of education does not intend to enter into any contract with the A. G. Blair Company, and, so far as we are advised, the A. G. Blair Company is not pressing its claim to a contract.

There is no reason to apprehend the doing of the things the preventing of which was the object of the suit; and the only aim of the inquiry before us is to determine whether a judgment for costs which has been rendered against the defendants, including the A. G. Blair Company, should stand, and incidentally, whether the plaintiff as a tax-payer was entitled to an injunction at the time of the filing of the suit.

Our conclusion, on an examination of the whole matter, is that he was not so entitled to an injunction; that his petition should be dismissed, and that the defendant now in court, who has come to this court by appeal, is entitled to a judgment for its costs. The judgment will be entered accordingly.

PARKER, J., concurring.

I want to add a word to give my own views about the construction of these sections of the statute that have been referred to by Judge Wildman.

Upon looking into the statutes we find that Section 3988, Revised Statutes, in substance, if not precisely in its present form, has been upon the statute books a great many years. I have not gone back beyond 1873, but it was there then, requiring that boards of education should advertise for bids in certain cases. The earliest provision that I find for a director of schools is in the statute passed April 25, 1904, 97 O. L., 360. My view of the functions of this officer or employe is that he has certain clerical duties to perform, and that he may exercise certain authority by virtue of the statute, and he may do certain other things under authority derived from the board of education. He shall purchase supplies and equipments as authorized by the board of education, and he is to attend to the clerical work incident to advertising for bids, in cases where bids are required by the statute, i. e., Section 3938, Revised Statutes.

As to the construction to be put upon Section 3988, Revised Statutes, much light is given by the case of *Board of Education* v. *Andrews,* 51 Ohio St., 199. My view of the matter is that advertisement for bids was not required in the purchase of fuel, and that the director of schools in purchasing this coal was under the control of the board of education, and that it was a purchase by the board, or a purchase by a director of schools under authority derived from the board. According to the record submitted he does not seem to have been vested with authority to make the purchase, but only to solicit proposals; and that he should first advertise for bids was not required by the board nor by the statute. His action amounted to simply soliciting proposals. When these bids or proposals came in, it became the duty of the board to consider them, and in considering these proposals they were not in any way hampered or controlled by the provisions of the section respecting the acceptance of the lowest responsible bid. Of course they were bound to execute their trust with honesty and fidelity, notwithstanding the absence

of such requirement; but we agree that to impeach or invalidate their action in the premises, it is not sufficient to show that the board may have blundered, may have fallen into some error, or that it may not have done the wisest thing possible under the circumstances.  Certain members of the board admit on the witness stand that if they had had the light upon the subject at the time of this transaction that has been thrown upon it since, they would probably have voted for the acceptance of another proposal, either a proposal to furnish smokeless coal, or the proposal that they did afterwards accept.  But it is not evident to us that such information was presented to them, or that they were aware that such information was within their easy reach, as would have apprised them that other of the bids were more advantageous to the board of education than the one accepted. The evidence submitted upon that subject is not so clear that it can be fairly said that by failing to avail themselves of this information they abused their authority to an extent that would render the transaction void, or that it ought to move a court of equity to enjoin the contract made.